# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LILLIAN M. COPELAND, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-16-575-SPS |
| COMMISSIONER of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

The claimant Lillian M. Copeland requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 18, 1969, and was forty-six years old at the time of the administrative hearing (Tr. 25, 149). She completed her GED, and has no past relevant work (Tr. 19, 167). The claimant alleges she has been unable to work since December 18, 2011, due to back pain (Tr. 166).

## Procedural History

On March 27, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Christopher Hunt conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated October 19, 2015 (Tr. 10-20). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but that she could only occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl, and that she was limited to work in environments that do not include any exposure to more than normal levels of fumes, noxious odors, dust, mists, gas, or poor ventilation (normal levels

being found in office or commercial buildings, generally). Finally, he found that she was limited to simple, repetitive, routine tasks (Tr. 14). The ALJ thus concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, small products assembler, produce sorter, office helper, cashier II, clerical mailer, charge account clerk, and food order clerk (Tr. 19-20).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC, specifically as to a treating physician opinion, and (ii) failing to properly assess her credibility. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of lumbar disc displacement, spondylosis, obesity, asthma, and migraine headaches, as well as the non-severe impairments of wrist pain (not carpal tunnel syndrome) and hypertension (Tr. 12). The relevant medical evidence includes x-rays from February 2013 (Tr. 311-312). An x-ray of the thoracic spine revealed degenerative disc disease of the C5-C7, with no acute process (Tr. 311, 429). The lumbar spine x-ray revealed a transitional lumbosacral segment, but no acute process (Tr. 312, 428). An x-ray of the cervical spine revealed postoperative and degenerative changes (Tr. 430). Additionally, the claimant had an MRI of the lumbar spine on March 30, 2013, which showed minimal retrolisthesis of L4 on L5; no significant central canal stenosis, disk herniation, or nerve root impingement; and transitional disk segment at L5-S1 with moderate right and mild to moderate left neural

foraminal narrowing (Tr. 218). Treatment notes from Dr. Robbins indicate that he followed up with her back pain, and that she reported therapy helping (Tr. 416-417). An April 1, 2013 letter from treating physician Dr. Rick Robbins, D.O., to the claimant informed her that she had some disk bulge at L4-5 and L5-S1 but no rupture, that she did not need surgery because there was no nerve impingement, and that she might benefit from epidural steroid injections (Tr. 267).

Due to her back pain, Dr. Robbins referred the claimant for a series of epidural steroid injections in 2013 (Tr. 220-233). The claimant had a relapse of pain in September 2013, and underwent another injection (Tr. 234). The claimant had injections in two areas of the back, and a treatment note on November 20, 2013, states that the claimant reported 80% relief for two months but a return of pain in the low thoracic and high lumbar region with muscle spasm, but that the lowest part of the lumbar region was still without significant pain (Tr. 239). She was given an epidural steroid injection for the high lumbar region "for improved relief and activity level" (Tr. 239). The claimant had another relapse of pain and underwent a series of three therapeutic injections beginning in April 2014 (Tr. 243, 350-363). That series provide 90-100% relief post injection for three months (Tr. 347). She then had relapses of pain in December 2014 (which provided 70-80% pain relief for two to three months) and March 2015, returning for therapeutic injections each time (Tr. 347, 399).

Dr. Robbins also referred the claimant for physical therapy (Tr. 460-484). She attended for approximately two months, and on discharge was noted to have partially met her goals (Tr. 464). The claimant was able to improve her range of motion in the lower

-5-

back, but still continued to have pain; she was discharged to a home exercise program (Tr. 264).

On July 1, 2014, Dr. Robbins completed a physical Medical Source Statement (MSS) regarding work the claimant could perform, in which he indicated that the claimant could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk less than two hours in an eight-hour workday, and sit less than 1 hour in an eight-hour workday, and that she must periodically alternate sitting and standing (Tr. 254-255). Additionally, he indicated that she was limited in pushing/pulling in both upper and lower extremities. In support of these conclusions, he cited her back pain and decreased movement (Tr. 255). Furthermore, he indicated that the claimant could never climb, balance, kneel, crouch, or crawl, and that she had limitations with regard to manipulative functions due to decreased strength and grip strength, and that she had some limitations in environmental functions due to her asthma (Tr. 256).

A state reviewing physician found the claimant could perform light work, but could only frequently climb ramps/stairs/ladders/ropes/scaffolds, balance, kneel, crouch, and crawl, and only occasionally stoop (Tr. 51-52). This opinion was affirmed on reconsideration (Tr. 61-62).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. In particular, the ALJ noted Dr. Robbins's MSS, and further included a summary of Dr. Robbins's treatment record with the claimant, noting that he saw her as far back as 2006, but only began treating her for low back pain in 2012, and that at the time he was asked to complete the MSS his treatment notes had normal

findings and did not include an examination of the back (Tr. 16). He then found the record with Dr. Robbins to be intermittent, noting no consistent abnormal physical examination findings as to the claimant's back, as well as the letter in which he stated she did not need surgery but would benefit from epidural steroid injections (Tr. 16). Furthermore, he noted that Dr. Robbins's opinion was inconsistent with the other medical evidence in the record, specifically the physical therapy notes reflecting increased activities, strength, and partially meeting her goals (Tr. 16). Lastly, he recognized that the regular epidural steroid injections had provided a large percentage of pain relief, despite relapses of pain (Tr. 17). He thus found Dr. Robbins's opinion that the claimant could perform less than sedentary work to be inconsistent with the evidence of record (Tr. 17). He further found the claimant not credible, citing these same records, and noting that she testified to having twenty to thirty back spasms a day, but that she reported only occasional pain and back spasms at physical therapy discharge (Tr. 16-17). The ALJ also found that the claimant's allegations of pain were not credible to the extent alleged, in light of the objective testing, conservative treatment resulting in pain relief, and partial achievement of goals in physical therapy (Tr. 18).

First, the claimant asserts that the ALJ erred in evaluating Dr. Robbins's treating physician opinion. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's

opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Robbins's opinion, as set forth above. The Court finds that the ALJ *did consider* his opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. The ALJ thus did not err in failing to include any limitations imposed by Dr. Robbins in the

claimant's RFC, where the ALJ thoroughly and completely summarized the evidence and explained the inconsistencies, notes, and the reasons for his finding. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The ALJ specifically noted nearly every medical record available in the administrative record, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

The claimant also contends that the ALJ erred in assessing her credibility. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801

(10th Cir. 1991). An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged as described above, *i. e.*, the ALJ gave clear and specific reasons that were specifically linked to the evidence in the record. The ALJ therefore did not err in analyzing the claimant's credibility.[2]

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

---

[2] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**